SALI SCHWARTZ *et al.*

*v.*

W. D. MESSINGER.

*Filed at Ottawa April 3, 1897—Rehearing denied October 8, 1897.*

1. LIENS—*when instrument will operate as an equitable assignment.* An instrument executed by the purchaser of material to be used in carrying out a contract, which sufficiently shows an intention to secure the price of the materials to the seller out of the proceeds of the contract, as a consideration for the credit, will operate as an equitable assignment to the extent indicated therein.

2. VOLUNTARY ASSIGNMENTS—*assignee takes property subject to existing equities.* An equitable assignment which is binding upon an insolvent binds his assignee, as the latter takes the assets subject to all equities existing against the same at the time of the assignment.

3. SAME—*debtor may secure creditor before determining on assignment.* Before a debtor has determined to make an assignment for the benefit of creditors, he may, in good faith, sell or mortgage his property or make other provision to secure a creditor out of the same, without violating the provisions of the Assignment act.

4. SAME—*creditor taking security without knowledge of his debtor's contemplated assignment may enforce same.* A creditor who, in good faith, takes a mortgage or other security for his debt without knowledge of his debtor's contemplated assignment may enforce the same.

5. SAME—*labor claims preferred only as against general creditors.* Labor claims, made preferred claims by the first proviso to section 6 of the Assignment act, as amended in 1883, (Laws of 1883, p. 53,) are preferred only as against general creditors, and not as against creditors holding valid liens on the insolvent's property at the time of the assignment.

*Schwartz* v. *Messinger*, 64 Ill. App. 495, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the County Court of Cook county; the Hon. O. N. CARTER, Judge, presiding.

E. A. ROSENTHAL, M. SALOMON, SIMEON E. BAUM, and HENRY F. JOSLIN, for appellants:

In order to constitute a bill of sale there must be absolute or general property in the subject matter of the

sale from the seller to the buyer.    21 Am. & Eng. Ency. of Law, 447; *Windmueller* v. *Van Horne,* 44 Ill. App. 143.

To make an equitable assignment there must be such an appropriation of the subject matter as to confer complete and present right on the party intended to be provided for, even where the circumstances do not admit of its immediate exercise.    The holder of the fund must not retain control over it, or have the power, on his own account, to collect it, or to revoke the promised disposition of it.    6 Am. & Eng. Ency. of Law, 656; *Christmas* v. *Russell,* 14 Wall. 69.

A secret agreement of sale is fraudulent *per se.    Allen* v. *Barr,* 85 Ill. 388; *Thompson* v. *Yeck,* 21 id. 73; *Thornton* v. *Davenport,* 1 Scam. 298; *Lamson* v. *Funk,* 108 Ill. 502.

The law will indulge in no refinements in order to fix the precise point of time at which a party reached the determination to make a general assignment.    *Bank* v. *Rehm,* 126 Ill. 465.

D. M. MARTINDALE, for appellee:

Until a debtor has determined upon an assignment he has complete power of disposal to convey or create liens by way of a preference in favor of a *bona fide* creditor. *Field* v. *Geohegan,* 125 Ill. 68; *Hanford Oil Co.* v. *Bank,* 126 id. 584; *Chicago Stamping Co.* v. *Hanchett,* 25 Ill. App. 198; *Preston* v. *Spaulding,* 120 Ill. 210.

A creditor, if he does not know that his debtor has determined to make an assignment, may take a mortgage or other security in good faith and enforce the same, and a subsequent assignment of the debtor will not affect such security.    *Bank* v. *Sanchez,* 131 Ill. 330.

When an order purports to pass a present interest in the chose to the alleged transferee, then, no matter what form the transaction may assume, it will be treated in equity as a valid assignment.    Bispham's Principles of Eq. 67, 222; *Hunt* v. *Rousmanier,* 8 Wheat. 174; *Tiernan* v. *Jackson,* 5 Pet. 580; 1 Am. Lead. Cases, 676; *Insurance Co.*

v. *Insurance Co.* 21 P. F. Smith, 34; *Bean* v. *Bullett,* 7 id. 221; *Bell* v. *Spooner,* 9 Leigh, 153; *Watson* v. *Bagaley,* 2 Jones, (Pa.) 164.

In order to constitute a valid assignment of a debt no particular form of words is necessary. Any words are sufficient which show an intention of transferring or appropriating the chose in action to the assignee for a valuable consideration. 1 Am. & Eng. Ency. of Law, 834.

Where the assignment is of property encumbered by mortgage or other lien, the assignee takes subject to the lien. He takes merely the equity of redemption, and has no control over the interest of the lienholder. *Field* v. *Ridgely,* 116 Ill. 424; *Jack* v. *Weiennett,* 115 id. 105.

The assignee takes no greater interest or better title than 'his assignor possesses. His title is affected with every infirmity and subject to all equities by which it was affected in the hands of the assignor. *Davis* v. *Chicago Dock Co.* 129 Ill. 180.

Mr. JUSTICE BAKER delivered the opinion of the court:

On September 17, 1895, Leon Hornstein, who did business as a printer in Chicago under the name of "Hornstein Bros.," made an assignment under the statute for the benefit of his creditors, to Joseph H. Francis. Before his assignment Hornstein had a contract to furnish to B. F. Norris, Allister & Co. a catalogue, for the price of $3800. About the middle of July, 1895, Hornstein bought from appellee paper to the value of $1205.52 to use in making the catalogue. At the time this paper was purchased, and as an inducement to appellee to sell the same, Hornstein promised to pay for it out of the proceeds of the B. F. Norris, Allister & Co. contract, and promised to secure the payment of said sum, together with the further sum of $800 which he then owed appellee, out of that contract. Afterwards, and in pursuance of that agreement, Hornstein, upon request of appellee, gave to him a paper, as follows:

"For value received, we hereby sell, assign and transfer all of our right, title and interest in and to the stock intended for the B. F. Norris & Allister Co. catalogue to W. D. Messinger, the same being 305 reams, 36x48 S. & S. C. tint book, valued at $1200; and also we hereby sell, assign and set over, out of the work already done on said catalogue, and of the account against said B. F. Norris & Allister Co., the sum of eight hundred dollars ($800) to W. D. Messinger, it being the intention to secure to said W. D. Messinger the sum of two thousand dollars ($2000) out of said job. All of which is for value received.

"CHICAGO, *September 12, 1895.*    HORNSTEIN BROS.,
Leon Hornstein."

On November 1, 1895, appellee filed his petition in the county court of Cook county, where the assets of Hornstein were being administered. The petition, as afterwards amended, set forth the above writing and the facts already stated, and asked the court to order the assignee to pay to appellee the sum of $1399.50, being the amount realized on the partially completed Norris, Allister & Co. contract, and which had been paid by said company to the assignee pursuant to an order of the court. The petition was resisted by the other creditors and the assignee, the appellants here. The court, after hearing the testimony offered, entered an order in conformity with the prayer of the petition. Appellants thereupon appealed to the Appellate Court, and said order was there affirmed.

It is contended that the writing of September 12 was ineffective to create a lien upon the stock therein mentioned or the proceeds of the catalogue contract, and is not binding upon the appellants. From the language employed it is manifest that it was intended appellee should have $2000 of the money to accrue on the B. F. Norris, Allister & Co. contract. The instrument was intended to operate as an equitable assignment of $2000 of the proceeds of that contract, and it is sufficient for that purpose. (1 Am. & Eng. Ency. of Law, 835, and authorities cited in notes; Bispham's Principles of Eq. sec. 167; *Peckham* v. *Haddock,* 36 Ill. 38.) The instrument, being

operative as an equitable assignment as against Horn-
stein, is binding upon the assignee, for the latter took
the property of Hornstein subject to all the equities that
existed in respect thereof in the hands of the assignor.
*Davis* v. *Chicago Dock Co.* 129 Ill. 180.

But appellants contend that, even if said instrument
could otherwise have any legal or equitable operation, it
can have none here, because it would be an unlawful pref-
erence of appellee. The instrument was given in pursu-
ance of an agreement between Hornstein and appellee
made in July preceding, when the paper was sold and
delivered, at a time when Hornstein had no thought of
making an assignment, and was but the carrying into
effect of that agreement. On the day of its date, Septem-
ber 12, Hornstein had not definitely concluded to make
an assignment for the benefit of his creditors, and appel-
lee had no notice or knowledge that he intended to make
an assignment. They were both, at that time, in a posi-
tion to enter into this transaction without violating the
provisions of the Voluntary Assignment act,—Hornstein
to make and deliver the writing, and appellee to accept
and rely upon the same. The instrument, therefore, was
perfectly valid and did not constitute an unlawful pref-
erence. Before the debtor has determined to make a gen-
eral assignment for the benefit of his creditors, he may,
in good faith, sell or mortgage any part of his property
or otherwise secure a creditor out of the same. And as to
the creditor, he may, if he does not know that his debtor
contemplates making an assignment, take a mortgage or
other security for his debt, in good faith, and enforce the
same. (*Home Nat. Bank of Chicago* v. *Sanchez,* 131 Ill. 330;
*Preston* v. *Spaulding,* 120 id. 208.) The instrument appears
to have been given and accepted in good faith, without
fraud or collusion. It was not given after Hornstein had
determined upon a general assignment, and with the in-
tent to prefer the claim of appellee. The latter, as a care-
ful and cautious business man, had obtained the promise

of Hornstein, before he delivered to him the stock of paper, that he would secure to him payment of the purchase money, and as a diligent creditor he afterwards got the promised security.

It is further contended that the trial court erred in excluding testimony offered by appellants showing the amount of money expended for labor upon the stock of paper in question to transform it into the B. F. Norris, Allister & Co. catalogue, and also in excluding evidence showing the amount of labor claims against the insolvent estate due and unpaid. It does not appear that the persons who performed labor in making said catalogues are insisting upon any liens upon the catalogues or are in any way contesting the right of appellee to the fund in question. Appellants have no claims for any such labor and have no right to said fund, and, consequently, the evidence was, as to them, irrelevant and immaterial. Nor was there error in excluding evidence showing the amount of labor claims against the insolvent estate due and unpaid. The statute provides "that all claims for the wages of any laborer or servant which have been earned within the term of three months next preceding the making of such assignment, * * * shall, after the payment of the costs, commissions and expenses of assignment, be preferred, and first paid, to the exclusion of all other demands and claims." The statute makes the claims of laborers preferred claims as against the general creditors, and not as against a *bona fide* purchaser for value. The funds referred to by the statute, and out of which said claims are to be paid, are funds properly in the hands of the assignee, and not funds to which he is not entitled as against one claiming adversely to him. The money in question did not belong to the assignee, but to appellee.

There is no error in the record, and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*